# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XPO LOGISTICS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LEEWAY GLOBAL LOGISTICS, LLC, a Nevada limited liability company; LEEWAY GLOBAL LOGISTICS, INC., a Nevada corporation; AARON PETERSON, an individual; ADAM SUDWEEKS, an individual; and ASAP ENERGY, LCC, a Utah limited liability company,<br><br>Defendants. | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**<br><br>Case No. 2:15-cv-00703-CW<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Paul M. Warner |
| ADAM SUDWEEKS, Individually and on Behalf of All Others Similarly Situated,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>XPO LOGISTICS, INC.,<br><br>Counterclaim Defendant. | |

On November 16, 2017, an *in camera* hearing was conducted in this matter to: (1) address the Plaintiff / Counterclaim Defendant XPO Logistics, Inc. ("XPO") and Defendant / Counterclaim Plaintiff Adam Sudweeks' ("Sudweeks") (collectively the "Settling Parties") Joint Motion for In Camera Hearing Regarding Approval of FLSA Settlement Agreement ("Motion for Approval"); and (2) to determine whether the Settling Parties had met the Fair Labor

Standards Act ("FLSA") requirements for Court approval of the settlement. XPO was represented by Robert H. Smeltzer of Howard & Howard. Sudweeks was present and represented by Susan B. Motschiedler of Parsons Behle and Latimer.

Having reviewed and considered the Settling Parties' briefing and heard the arguments presented at the November 16, 2017 hearing, the Court hereby enters its Findings of Fact and Conclusions of Law and ORDERS as follows.

## FINDINGS OF FACT

**Background**

1. XPO provides logistics services, including truck brokerage and transportation, last mile logistics, intermodal, contract logistics, ground and air expediting, drayage, global forwarding, and managed transportation.

2. Sudweeks worked for XPO as an account manager on freight logistics accounts from approximately December 2013 to June 2015.

3. As an account manager, Sudweeks was paid a salary plus commission.

4. Sudweeks' initial salary at XPO was $35,000 per year, and later $42,000 per year.

5. In his position as an account manager, Sudweeks sought out new potential logistics customers, provided quotes for current or future freight shipments, entered shipments into XPO's computer systems, and serviced existing customers by giving them updates on shipments in transit.

6. Sudweeks was also responsible for creating and keeping accurate administrative records relating to the shipments, including things like bills of lading and other shipping documents.

7. XPO terminated Sudweeks' employment on June 29, 2015.

8. On or around July 21, 2015, Sudweeks became employed at Leeway Global.

9. XPO initiated this action by filing a four-count Complaint for Preliminary Injunction and Other Relief against Sudweeks and another former XPO employee, Aaron Peterson ("Peterson"), and their subsequent employer Leeway.

10. Count I alleged that Sudweeks and Peterson violated their respective Employment Agreements with XPO by going to work for Leeway, its competitor in the business of providing third-party logistics services; soliciting its customers; and using or disclosing its confidential information.

11. Count II alleged that, while still employed, Sudweeks and Peterson breached their fiduciary duties to XPO by operating a separate company called ASAP on XPO's time and with its money.

12. Count III alleged that Leeway intentionally interfered with XPO's economic relations by employing Sudweeks and Peterson in violation of the Employment Agreements and putting them in a position to solicit XPO's customers and trade on its Confidential Information.

13. Count IV alleged that Defendants misappropriated XPO's trade secrets.

14. In response to the Complaint, Sudweeks filed a partial answer, as well as a three-count Counterclaim, alleging: (a) a collective action against XPO for unpaid overtime per §207(a)(1) of the FLSA; (b) breach of contract (in the alternative); and (3) breach of the implied covenant of good faith and fair dealing (in the alternative).

15. Sudweeks amended his FLSA counterclaim on two occasions thereafter, eventually dropping the collective action and pursuing only his individual overtime claims and the two alternative claims.

**The Nature of the Settling Parties' Dispute**

16. The Settling Parties dispute whether Sudweeks was exempt from the overtime provision of Section 207(a)(1) of the FLSA.

17. Sudweeks alleges that, as an account manager on freight logistics accounts, XPO misclassified his job position as exempt from that overtime provision.

18. Sudweeks denied that he was exempt under either the administrative or commissioned sales exemptions because he did not meet the requirements for those exemptions that he: (1) perform work "directly related to assisting with the running or servicing of the business, as distinguished from manufacturing a product" within the meaning of 29 C.F.R. § 541.201(a); and (2) work for a "retail or service establishment," within the meaning of 20 C.F.R. §§779.24 and 779.411, though Sudweeks conceded that he was a commissioned salesperson.

19. XPO contends that Sudweeks fell under the bona fide administrative and/or commissioned sales employee exemptions of the FLSA.

20. XPO's position is that Sudweeks met: (1) the administrative exemption because his duties included work directly related to assisting with the running or servicing of the business, including but not limited to record keeping; and (2) that XPO was in fact a service establishment and, therefore, as a commissioned sales person, Sudweeks fell within that exemption.

21. The Settling Parties dispute the number of hours per week in excess of 40 that Sudweeks actually worked.

22. Sudweeks alleges that, between December 2013 and June 2015, he regularly worked seventy (70) hours per week.

23. XPO contends that Sudweeks did not regularly work in excess of 40 hours per week at its direction.

24. XPO also contends that it did not require or permit Sudweeks to perform the alleged extra work.

25. Sudweeks estimates that he worked 2,000 hours of overtime for which XPO did not pay him.

26. XPO disputes Sudweeks' estimate of having worked 2,000 unpaid hours, because, absent time records (which XPO did not maintain for employees classified as "exempt"), it was not based on any actual documentation or proof (e.g. time cards, entry logs or even computer logs), but on Sudweeks' recollection of his "typical" work hours, both during the week and over the weekend.

27. XPO also argued that, based on the records it reviewed, Sudweeks' estimate of 2,000 hours must have included long periods of time when he was not actually performing any work, but simply dealing with occasional communications from customers in the event they had a problem with or needed information about a particular shipment.

28. XPO therefore argued that, because Sudweeks was relieved from duty during these long periods of apparent inactivity and could use the time effectively for his own purposes, he was "waiting to be engaged" rather than "engaged to wait."

29. XPO estimated that, in the absence of an exemption, Sudweeks worked only 500-750 hours of unpaid overtime.

30. The Settling Parties dispute the computation of wages owed to Sudweeks.

31. Sudweeks claimed that he was owed $55,500.00 for unpaid overtime accrued during his 1 ½ year employment with XPO.

32. Sudweeks calculated the amount he was owed as follows: (1) he turned his average salary for the period ($38,500) into a regular hourly rate of $18.50 per hour; and (2) he then multiplied his estimate of 2,000 unpaid overtime hours times his overtime rate of $27.75 per hour (1.5 times his regular hourly rate of $18.50 per hour).

33. XPO contends that, in the absence of an exemption, Sudweeks' unpaid overtime would be between $4,687.50 and $7,031.25.

34. XPO's position is that Sudweeks' unpaid overtime should be calculated by multiplying ½ Sudweeks' hourly rate times the number of overtime hours worked.

35. XPO bases its position on the "fluctuating workweek rule" of 29 C.F.R. § 778.114.

36. XPO asserts that there was a clear understanding between the Settling Parties that Sudweeks' fixed salary was compensation for all of the hours he worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period.

37. XPO calculated the amount of Sudweeks' unpaid overtime by multiplying 0.5 times an estimated hourly rate of $18.75 times the number of estimated overtime hours—ranging from a low of 500 to a high of 750.

38. There is not significant documentary evidence to support how many unpaid hours were worked or what Sudweeks' exact hourly rate should be.

39. Compensation for Sudweeks' overtime claim could range from a low of $0 (in the event he was found exempt from the FLSA's overtime provisions) to a high of $55,500.00, not including liquidated damages and attorneys' fees.

40. If Sudweeks was not found to be exempt, his unpaid overtime claim could range from a low of $4,687.50 to the same $55,500.00 high.

**The Proposed Settlement**

41. The settlement amount to be paid is in the mid-range of those possibilities.

42. The settlement terms were based, in part, on confidential facts, including but not limited to information relating to access to XPO buildings and computers, which implicate security concerns.

43. Sudweeks is no longer employed by XPO and his circumstances will not recur.

44. There are no other similarly situated XPO employees, and XPO and Sudweeks are the only parties concerned with whether the settlement is fair and equitable.

45. No other party has an FLSA claim against XPO or any interest in Sudweeks' individual FLSA claim.

46. XPO has no history of not complying with the FLSA.

47. In negotiating the settlement agreement, both XPO and Sudweeks were represented by competent counsel who diligently represented their respective clients.

48. The Settling Parties have been litigating this dispute for over two years.

49. For more than one year after discovery, the Settling Parties attempted to resolve this dispute and negotiate a settlement with and without the aid of a private mediator.

50. On September 8, 2016, the Settling Parties participated in mediation with an experienced employment law mediator, Lois Baar, but were unsuccessful in resolving this case.

51. Sudweeks' counsel are experienced employment attorneys, who litigated this matter for more than two years with competence, diligence, and professionalism.

52. Through September 30, 2016, Sudweeks' attorneys spent more than 400 hours litigating the FLSA portion of the case, which included filing and responding to numerous motions and engaging in significant adversarial discovery prior to settlement.

53. Sudweeks' counsels' involvement in this case impaired their ability to accept work on other cases.

54. Sudweeks' fee arrangement with counsel is consistent with his counsels' customary billing fees, and provides that a percentage of the overall recovery will be allocated to attorney's fees.

55. Sudweeks' claim is not a collective action under the FLSA.

56. The proposed settlement agreement settles all claims between XPO and Sudweeks, and provides for dismissal with prejudice of those claims.

57. The other four Defendants in this case will remain in the case, and it is anticipated that Sudweeks will be a witness in this case after he is dismissed as a party.

## **CONCLUSIONS OF LAW**

Based on the Findings of Fact, the Court makes the following Conclusions of Law:

58. Sudweeks' FLSA litigation involved a *bona fide* dispute in terms of law and fact, namely the potential applicability of FLSA exemptions to Sudweeks' work, the amount of any overtime worked and the proper method of calculating any overtime rate.

59. The proposed settlement is fair and equitable to both parties concerned, as it was (a) fairly and honestly negotiated over a long period of time with the assistance of competent counsel on both sides and an outside mediator; (b) the serious legal and factual issues referenced above placed the litigation's outcome in doubt for both parties concerned; (c) the negotiated and immediate recovery was more valuable than the mere possibility of a more favorable outcome after additional, significant litigation; and (d) both affected parties and their respective counsel believe the settlement is fair and reasonable.

60. The proposed settlement contains a reasonable award of attorneys' fees, considering: (a) the time and labor required to prosecute the FLSA case; (b) the novelty and difficulty of the legal and factual questions presented by the case; (c) the requisite skill required to prosecute the case properly; (d) the fact that Sudweeks' counsel had to forego other employment due to the longstanding and involved nature of this case; (e) the customary fees ordinarily received by plaintiff's counsel for similar work; (f) the fact that the fee was contingent and not fixed, and the greater risk associated therewith; and (g) the experience, reputation and ability of Sudweeks' FLSA counsel.

61. The settlement is consistent with and furthers the purposes of the FLSA, including its aim to protect employee rights from an employer's superior bargaining power. More specifically, the settlement does not affect employees other than Sudweeks and there is no

chance that his alleged circumstances will recur, as he is no longer employed by XPO. Further, XPO has no history of not complying with the FLSA.

62. The parties to the settlement have included a confidentiality provision in their settlement and have requested that it not be made part of the public record and/or that it be filed under seal (Doc. 146).

63. The court finds that keeping the amount and terms of the settlement confidential and out of the public record under these circumstances will not undermine the purposes of the FLSA.

64. There is no per se rule against such confidentiality in the FLSA itself.

65. Even in the absence of a confidential settlement, Sudweeks could not be forced to comment on the case or the settlement in response to any future inquiries by the press or otherwise. Consequently, Sudweeks should not be barred from voluntarily adopting such a posture in advance of settling the matter.

66. The confidentiality terms of the settlement played a significant role in these two parties' decision to settle all claims between them, is the result of fair bargaining between two well-represented parties, and embodies a reasonable compromise. It therefore does not conflict with the FLSA's purpose of protecting against employer abuses. *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 BL 29709 (S.D.N.Y. Feb. 3, 2016). Further, the Court "recognizes that preserving the confidentiality of settlement agreements may encourage settlement, and that denying a motion to seal may chill future settlement discussions." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012).

67. The settlement terms were derived from XPO's confidential business information which implicate security concerns if disclosed publicly.

68. As set forth above, this case does not involve any widespread or systemic abuse of which the public has the right to be aware, but a vigorous dispute over liability with respect to one former employee that could have been resolved for or against either party.

69. The FLSA claim was but a small part of a much broader and still pending commercial dispute between multiple parties who have no interest in the content or terms of the FLSA settlement.

70. There are other confidential terms in the settlement agreement that relate only to XPO's non-FLSA claims against Sudweeks, the parties' continuing competitive relationship going forward, and XPO's litigation strategy in the remaining case against other parties post-settlement. These two Settling Parties have a significant privacy interest with respect to these terms.

71. In sum, the court in its discretion finds that any right of access that the public may ordinarily have to the settlement agreement as a public document is outweighed by these factors. *See Helm v. Kansas,* 656 F.3d 1277, 1292 (10th Cir. 2011).

## ORDER

The Motion for Approval is GRANTED, and the Court approves the Settling Parties' Confidential Settlement Agreement. Mr. Sudweeks is dismissed as a party to this action and all claims and counterclaims between the Settling Parties are DISMISSED with prejudice.

DATED this 12th day of January, 2018.

BY THE COURT:

_____
Clark Waddoups
United States District Judge